1

2

3

4

5

6

7

8                      **UNITED STATES DISTRICT COURT**

9                      **CENTRAL DISTRICT OF CALIFORNIA**

10

11    SHARON L. PATNODE,                  )   Case No. EDCV 06-00407 SS
                                          )
12                     Plaintiff,         )
                                          )   **MEMORANDUM DECISION AND ORDER**
13              v.                        )
                                          )
14    MICHAEL J. ASTRUE,                  )
      Commissioner of the Social          )
15    Security Administration,            )
                                          )
16                     Defendant.         )
      _____)

17

18

19         Plaintiff Sharon L. Patnode ("Plaintiff") brings this action

20    seeking to overturn the decision of the Commissioner of the Social

21    Security Administration[1] (hereinafter the "Commissioner" or the

22    "Agency") denying her application for disability benefits.

23    Alternatively, she asks for a remand.  The parties consented, pursuant

24    to 28 U.S.C. § 636(c), to the jurisdiction of the undersigned United

25    _____

26         [1] Michael J. Astrue has become the Commissioner of Social Security
      Administration.  Pursuant to Rule 25(d)(1) of the Federal Rules of Civil
27    Procedure, he is substituted for Commissioner Jo Anne B. Barnhart as the
      defendant in this suit.  F.R.C.P. 25(d)(1).  The instant action survives
28    "notwithstanding any change in the person occupying the office of
      Commissioner of Social Security[.]"  42 U.S.C. § 405(g).

States Magistrate Judge.  Pursuant to the Court's Case Management Order, the parties filed a Joint Stipulation ("Jt. Stip.") on December 21, 2006.  For the reasons stated below, the decision of the Commissioner is REVERSED and REMANDED for further administrative proceedings.

**PROCEDURAL HISTORY**

On July 3, 2000, Plaintiff, then age forty-two, filed an application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Title II and Part A of Title XVIII of the Social Security Act.  (Administrative Record ("AR") 112, 636). Plaintiff's application was denied initially and upon reconsideration. (AR 54, 60).  Plaintiff then received a hearing before Administrative Law Judge ("ALJ") Fenton H. Hughes on May 7, 2002.  (See AR 46).  On May 10, 2002, ALJ Hughes issued a decision denying benefits.  (AR 46-51). Plaintiff sought review of that decision before the Appeals Council. (AR 72-74).  Plaintiff also filed subsequent applications for DBI and SSI on July 16, 2002.  (AR 124-26, 641-43).  On July 8, 2003, the Appeals Council vacated the decision of ALJ Hughes and remanded the case to an ALJ for further proceedings.  (AR 78-79).  The Appeals Council instructed the ALJ on remand to advise Plaintiff of her right to cross-examine the medical expert, to advise Plaintiff of her right to representation, and to determine whether Plaintiff's application for benefits on July 16, 2002 should be consolidated with her July 3, 2000 application.  (Id.).

On May 11, 2004, Plaintiff received a hearing before ALJ F. Keith Varni.  (AR 692-727).  On July 6, 2004, ALJ Varni issued a decision

2

denying benefits. (AR 21-29). Plaintiff sought review of that decision before the Appeals Council. (AR 16). On February 16, 2006, the Appeals Council denied review, and the ALJ's decision became the final decision of the Commissioner. (AR 7-10). Plaintiff commenced the instant action on April 14, 2006.

## STATEMENT OF FACTS

Plaintiff alleges that she became disabled on May 23, 2001, due to colitis, pancreatitis, irritable bowel disease, leukocytosis, inflammatory bowel disease, and depression.[2] (AR 133, 699, 706-07). At the May 11, 2004 hearing, Plaintiff stated that she experiences severe cramping in her stomach and cannot control her bowels. (AR 706). She stated that she typically uses the bathroom eight to ten times a day and that she often has accidents. (AR 707-08). She claimed that she does not feel secure outside her home because she fears having an accident somewhere. (AR 706). She stated that she experiences frequent memory loss, fits of crying, seizures, and loss of consciousness. (AR 706-11).

## A.   Third Party Daily Activities Questionnaires

Janet Blanchette, Plaintiff's mother, completed Daily Activities Questionnaires in August 2002 and April 2003. (AR 172-77, 205-10). Plaintiff resided with her mother during that time. (AR 172, 205).

---

[2] Plaintiff initially alleged that she became disabled on December 3, 1996. (AR 112, 636). However, at the May 11, 2004 hearing, Plaintiff amended this date to May 23, 2001. (AR 699).

Plaintiff's mother noted that Plaintiff was "in constant pain." (AR 177). She stated that Plaintiff could not care for herself, cook for herself, or do household chores because she regularly experienced memory loss and was "very unsteady on her feet." (AR 173-74, 176, 206-07). She observed that she did not "see [Plaintiff] ever taking care of herself again." (AR 210). Plaintiff's mother explained that Plaintiff wore protective diapers and sometimes had accidents. (AR 207, 209). She reported that Plaintiff feared leaving the house, having bowel accidents, and getting sick in public. (AR 176). She also reported that Plaintiff generally spent the day in bed or watching television and only left the house for doctor's appointments. (AR 172-74).

**B.   Relevant Medical History**

The record contains numerous medical opinions concerning Plaintiff's condition. In February 2002, Dr. Eduardo Garcia, one of Plaintiff's treating physicians, reported that:

> [Plaintiff] suffers from irritable bowel syndrome, depression, anxiety disorder, and fibromyalgia. She is on several medications to help control her symptoms of pain and loose frequent stools. She is on antidepressants. She suffers from chronic muscular pain and weakness. She feels unable to function outside her home due to her many ailments. Her constitution of problems makes it very difficult for her to function in a work environment.

4

1    (AR 458).   In September 2002, Dr. Garcia added post traumatic stress
2    syndrome and chronic fatigue syndrome to his diagnosis.  (AR 492).  He
3    also reported that Plaintiff's physical Residual Functional Capacity
4    ("RFC") was limited to two hours continuous sitting, one to two hours
5    continuous standing, and one hour continuous walking.  (AR 491).  He
6    reported that, with rests, Plaintiff could sit for eight hours, stand
7    for two to four hours, and walk for two hours.  (AR 491).  In May 2003,
8    Dr. Garcia completed an application for Plaintiff to obtain a Disabled
9    Person Placard.  (AR 609).  On the application, Dr. Garcia reported that
10   Plaintiff's mobility was substantially impaired by a neuropathic
11   disorder.  (Id.).

12

13       Dr. Rakesh Chopra, another treating physician, diagnosed Plaintiff
14   with irritable bowel disease, pancreatitis, and fibromyalgia.  (AR 474).
15   Dr. Chopra's physical RFC assessment found that, out of an eight-hour
16   workday, Plaintiff could sit for two hours, stand for one hour, and walk
17   for one hour.  (AR 473).   He further reported that Plaintiff could
18   occasionally lift ten pounds but never more than ten pounds.  (Id.).

19

20       Dr. Pamela Jones, Plaintiff's treating psychiatrist, diagnosed
21   Plaintiff with major depression and recurrent anxiety disorder.  (AR
22   460).   Dr. Jones reported that Plaintiff required medication and
23   psychotherapy for treatment of chronic symptoms.  (Id.).  Dr. Jones
24   found that Plaintiff was "unable to work secondary to the severity of
25   her illness."  (Id.).
26   \\
27   \\
28   \\

5

1  **C.   Consultative Physician Evaluations**

2

3        Dr. Eduardo Barreto performed a consultative psychiatric

4  examination of Plaintiff on October 6, 2002. (AR 493). Dr. Barreto

5  found that Plaintiff was "extremely depressed" and "psychiatrically

6  impaired." (AR 496). He reported that Plaintiff stated she had been

7  raped in May 2002 and had attempted suicide on multiple occasions. (AR

8  493). He noted that "[t]here was no evidence of malingering or

9  fictitious behavior." (AR 494). Dr. Barreto concluded that Plaintiff

10 "would have problems working on a consistent basis," "cannot keep up a

11 work pace," "has tremendous psychomotor retardation," and "has post

12 traumatic symptoms with anxiety." (AR 496).

13

14       Dr. Nicolas Nassar performed a consultative internal medicine

15 examination in January 2004. (AR 623). Dr. Nassar found that

16 Plaintiff's ability to perform work-related activities was impaired.

17 (AR 629). Specifically, he found that Plaintiff's muscle weakness and

18 pain due to fibromyalgia limited her to working six hours in a day, with

19 four hours of sitting and two hours of standing and walking. (AR 627).

20

21       In December 2002, Dr. K. Gregg, a non-examining State Agency

22 psychiatrist, reported that Plaintiff had depression in partial

23 remission. (AR 520). Dr. Gregg found that Plaintiff's impairment was

24 not severe and did not significantly limit her. (AR 517, 529).

25

26       Finally, Dr. Sami Nafoosi testified at the May 11, 2004 hearing

27 after reviewing Plaintiff's medical record. (AR 694-702). Dr. Nafoosi

28 diagnosed Plaintiff with irritable bowel disease and depression. (AR

695).  He stated that these conditions would limit Plaintiff to lifting twenty pounds occasionally and ten pounds frequently.  (<u>Id.</u>).  He stated that Plaintiff would have no other work-related restrictions.  (<u>Id.</u>).

### THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To qualify for disability benefits, a claimant must demonstrate a medically determinable physical or mental impairment that prevents him from engaging in substantial gainful activity[3] and that is expected to result in death or to last for a continuous period of at least twelve months.  <u>Reddick v. Chater</u>, 157 F.3d 715, 721 (9th Cir. 1998) (citing 42 U.S.C. § 423(d)(1)(A).  The impairment must render the claimant incapable of performing the work he previously performed and incapable of performing any other substantial gainful employment that exists in the national economy.  <u>Tackett v. Apfel</u>, 180 F.3d 1094, 1098 (9th Cir. 1999) (citing 42 U.S.C. § 423(d)(2)(A)).

To decide if a claimant is entitled to benefits, an ALJ conducts a five-step inquiry.  20 C.F.R. §§ 404.1520, 416.920.  The steps are:

(1)  Is the claimant presently engaged in substantial gainful activity?  If so, the claimant is found not disabled. If not, proceed to step two.

---

[3]   Substantial gainful activity means work that involves doing significant and productive physical or mental duties and is done for pay or profit.  20 C.F.R. §§ 404.1510, 416.910.

(2)   Is the claimant's impairment severe?  If not, the claimant is found not disabled.  If so, proceed to step three.

(3)   Does the claimant's impairment meet or equal one of list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1?  If so, the claimant is found disabled.  If not, proceed to step four.

(4)   Is the claimant capable of performing his past work?  If so, the claimant is found not disabled.  If not, proceed to step five.

(5)   Is the claimant able to do any other work?  If not, the claimant is found disabled.  If so, the claimant is found not disabled.

Tackett, 180 F.3d at 1098-99; see also Bustamante v. Massanari, 262 F.3d 949, 953-54 (9th Cir. 2001) (citations omitted); 20 C.F.R. §§ 404.1520(b)-(g)(1) & 416.920(b)-(g)(1).

The claimant has the burden of proof at steps one through four, and the Commissioner has the burden of proof at step five.  Bustamante, 262 F.3d at 953-54.  If, at step four, the claimant meets his burden of establishing an inability to perform past work, the Commissioner must show that the claimant can perform some other work that exists in "significant numbers" in the national economy, taking into account the claimant's residual functional capacity ("RFC"),[4] age, education, and

---

[4]   Residual functional capacity is "what [one] can still do despite [his] limitations" and represents an "assessment based upon all of the relevant evidence." 20 C.F.R. §§ 404.1545(a), 416.945(a).

8

work experience.  Tackett, 180 F.3d at 1098, 1100; Reddick, 157 F.3d at 721; 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).  The Commissioner may do so by the testimony of a vocational expert or by reference to the Medical-Vocational Guidelines appearing in 20 C.F.R. Part 404, Subpart P, Appendix 2 (commonly known as "the Grids").  Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001).  When a claimant has both exertional (strength-related) and nonexertional limitations, the Grids are inapplicable and the ALJ must take the testimony of a vocational expert. Moore v. Apfel, 216 F.3d 864, 869 (9th Cir. 2000).

## THE ALJ'S DECISION

The ALJ employed the five-step sequential evaluation process.  At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the alleged onset of the disability. (AR 23).  Next, at step two, the ALJ concluded that Plaintiff's musculoskeletal system and digestive system impairments were severe. (AR 28).  At the third step, however, he found that Plaintiff's impairments did not meet or equal any of the impairments appearing in the "Listing of Impairments" set forth in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (Id.).

At step four, the ALJ found Plaintiff's testimony regarding her limitations "not totally credible." (Id.).  The ALJ commented that he found Plaintiff's complaints to be "inconsistent" with the medical evidence.  (AR 27).  Ultimately, the ALJ described Plaintiff as having the RFC to do "light" work.  (AR 28).  The ALJ found that Plaintiff could return to her past relevant work.  (AR 29).  As the ALJ found

9

Plaintiff could return to her past relevant work, he did not have to reach step five in the sequential analysis.

### STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court may review the Commissioner's decision to deny benefits. The court may set aside the Commissioner's decision when the ALJ's findings are based on legal error or are not supported by substantial evidence in the record as a whole. Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001); Smolen v. Chater, 80 F.3d 1273, 1279 (9th Cir. 1996).

"Substantial evidence is more than a scintilla, but less than a preponderance." Reddick, 157 F.3d at 720. It is "relevant evidence which a reasonable person might accept as adequate to support a conclusion." Id. To determine whether substantial evidence supports a finding, the court must "'consider the record as a whole, weighing both evidence that supports and evidence that detracts from the [Commissioner's] conclusion.'" Aukland, 257 F.3d at 1035 (quoting Penny v. Sullivan, 2 F.3d 953, 956 (9th Cir. 1993)). If the evidence can reasonably support either affirming or reversing that conclusion, the court may not substitute its judgment for that of the Commissioner. Reddick, 157 F.3d at 720-21.

\\
\\
\\
\\

1

2

**DISCUSSION**

3

4      Plaintiff alleges that the Commissioner's decision should be
5 overturned for two reasons.  First, she contends that the ALJ improperly
6 rejected the examining physicians' opinions.  (Jt. Stip. At 3-8).
7 Second, Plaintiff argues that the ALJ improperly rejected Plaintiff's
8 testimony.  (Jt. Stip. at 14-16).  For the reasons set forth below, the
9 Court agrees.[5]

10

11 **A.    The ALJ Improperly Rejected Plaintiff's Testimony As Not Credible**

12

13      Unless there is affirmative evidence that the claimant is
14 malingering, the ALJ's reasons for rejecting the claimant's testimony
15 regarding subjective symptoms must be "clear and convincing."  Burch v.
16 Barnhart, 400 F.3d 676, 680 (9th Cir. 2005) (citing Lester v. Chater,
17 81 F.3d 821, 834 (9th Cir. 1995)).  If the ALJ finds the claimant's
18 testimony not to be credible, "[t]he ALJ must specify what testimony is
19 not credible and identify the evidence that undermines the claimant's
20 complaints – '[g]eneral findings are insufficient.'"  Id. (quoting
21 Reddick, 157 F.3d at 722).  Furthermore, where the claimant produces
22 objective medical evidence of an underlying impairment, an ALJ may not
23 reject a claimant's subjective complaints based solely on a lack of
24 medical evidence to fully corroborate the alleged severity of symptoms.
25 Id. (citing Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991)).
26 In determining whether a claimant's testimony regarding the severity of
27 her symptoms is credible, "the ALJ may consider, for example: (1)

28      [5]  The Court will address Plaintiff's claims in a different order
than enumerated and briefed in the Joint Stipulation.

11

ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, and other testimony by the claimant that appears less than candid; (2) unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment; and (3) the claimant's daily activities." <u>Smolen</u>, 80 F.3d at 1284 (citations omitted); <u>see also</u> <u>Thomas v. Barnhart</u>, 278 F.3d 947, 958-59 (9th Cir. 2002) (listing factors such as (1) a claimant's reputation for truthfulness; (2) inconsistencies in her testimony or between her testimony and her conduct; (3) her daily activities; (4) her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains).

Here, the ALJ cited no affirmative evidence that Plaintiff was malingering. The ALJ generally asserted that Plaintiff's testimony regarding the severity of her abdominal pain and the frequency of her bowel movements was "not supported by objective medical evidence." (AR 27). However, Plaintiff clearly produced objective medical evidence of an underlying impairment, namely, irritable bowel syndrome, that could reasonably be expected to produce abdominal pain and frequent bowel movements. (<u>See, e.g.</u>, AR 458, 695-98). Therefore, the ALJ was not permitted to reject Plaintiff's testimony concerning the severity of her symptoms solely on the basis of a lack of medical evidence to fully corroborate the alleged severity. See <u>Burch</u>, 400 F.3d at 680 (citing <u>Bunnell</u>, 947 F.2d at 345).

\\

\\

The ALJ also suggested that Plaintiff's testimony regarding the severity of her physical symptoms was not consistent with the medical record. (AR 27). Specifically, the ALJ stated that Plaintiff lost only six pounds in the seven-year period leading up to the May 2004 hearing and that this was inconsistent with Plaintiff's testimony regarding the frequency of her bowel movements. (Id.). However, the ALJ's assertion that Plaintiff lost only six pounds in the seven years prior to the May 2004 hearing is incorrect. In January 2002, Plaintiff weighed 138 pounds (AR 422); in January 2003, Plaintiff weighed 128 pounds (AR 532); and at the May 2004 hearing, Plaintiff testified that she weighed between 118 and 120 pounds (AR 709). This pattern of weight loss is consistent with Plaintiff's testimony. Additionally, the ALJ stated that "there has never been persisting deficiency of nutrient elements in [Plaintiff's] blood" and that this was inconsistent with Plaintiff's testimony regarding the frequency of her bowel movements. (AR 27). Nonetheless, the ALJ points to no evidence in the record indicating that bowel movements consistent with Plaintiff's testimony would necessarily result in a deficiency of nutrient elements in the blood. (See id.).

In addition, the ALJ rejected Plaintiff's testimony regarding the severity of her depression and other mental symptoms. The ALJ reasoned that Plaintiff's testimony was not credible because Plaintiff had received no psychiatric care in over a year.[6] (AR 27). However, this reason is not convincing. The Ninth Circuit has "particularly criticized the use of a lack of treatment to reject mental complaints

---

[6]   At the hearing, Plaintiff testified that she had not sought psychiatric treatment in the previous year because she could not afford it. (AR 709). She also testified that she was currently taking medication for her depression. (Id.).

both because mental illness is notoriously underreported and because it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." Regenniter v. Comm'r of Soc. Sec. Admin., 166 F.3d 1294, 1299-1300 (9th Cir. 1999) (citations and internal quotation marks omitted).

The ALJ also found there was no documented impairment that might require the lifestyle Plaintiff described. (AR 27-28). Plaintiff's depression, however, was clearly documented and could reasonably be expected to produce symptoms consistent with Plaintiff's testimony. (See, e.g., AR 458, 460, 695-98). Plaintiff's treating physicians also reported that Plaintiff was severely limited by her illness. (See e.g., 458, 460). Moreover, the plaintiff's mother corroborated Plaintiff's testimony regarding her physical and mental symptoms and lifestyle.[7]

_____

[7] Plaintiff's mother reported that Plaintiff was unable to take care of herself, was "in constant pain," regularly experienced memory loss, and was "very unsteady on her feet." (AR 173-74, 176-77, 206-07). She reported that Plaintiff wore protective diapers because she could not control her bowels. (AR 207, 209). She reported that Plaintiff generally spent the day in bed or watching television and left the house only for doctor's appointments. (AR 172-74).

The Court notes that the ALJ rejected Plaintiff's mother's accounts of Plaintiff's pain and lifestyle because Plaintiff had received no psychiatric care in the year before the May 2004 hearing. (AR 27). This reason, however, is not germane to Plaintiff's mother's questionnaires. Plaintiff's mother's questionnaires were based on her daily, eyewitness observation of Plaintiff. (AR 172, 205). Plaintiff's reasons for not seeking psychiatric treatment do not bear upon the validity of Plaintiff's mother's first-hand observations. See Stout v. Commissioner, 454 F.3d 1050, 1053 (9th Cir. 2006) (citations omitted); see also Dodrill v. Shalala, 12 F.3d 915, 918-19 (9th Cir. 1993) (holding that finding claimant not to be credible was not a germane reason for rejecting lay witness testimony concerning claimant's condition because a lay witness can "make independent observations of the claimant's pain and other symptoms" and "can often tell whether someone is suffering or merely malingering.").

As such, Plaintiff's lifestyle and limitations were well-documented in the record and consistent with Plaintiff's testimony.

In sum, the ALJ failed to give "clear and convincing" reasons for rejecting Plaintiff's testimony regarding her physical and mental symptoms. <u>See</u> <u>Burch</u>, 400 F.3d at 680 (citing <u>Bunnell</u>, 947 F.2d at 345). Therefore, the ALJ improperly rejected Plaintiff's testimony.

**B.    The ALJ Improperly Rejected The Opinions Of The Treating And Consultative Physicians**

Even if a treating physician's opinion is contradicted by another doctor, the ALJ may not reject the treating physician's opinion without setting forth "specific and legitimate reasons" supported by substantial evidence in the record. <u>Rollins v. Massanari</u>, 261 F.3d 853, 856 (9th Cir. 2001) (citing <u>Reddick</u>, 157 F.3d at 725). "[M]ore weight is given to a treating physician's opinion than to the opinion of a nontreating physician because the treating physician 'is employed to cure and has a greater opportunity to know and observe the patient as an individual.'" <u>Andrews v. Shalala</u>, 53 F.3d 1035, 1040-41 (9th Cir. 1995) (quoting <u>Magallanes v. Bowen</u>, 881 F.2d 747, 751 (9th Cir. 1989)). Similarly, "greater weight is accorded to the opinion of an examining physician than a non-examining physician." <u>Id.</u> at 1041 (citations omitted). In fact, a "nonexamining physician's conclusion, with nothing more, does not constitute substantial evidence, particularly in view of the conflicting observations, opinions, and conclusions of an examining physician." <u>Pitzer v. Sullivan</u>, 908 F.2d 502, 506 n.4 (9th Cir. 1990) (citing <u>Gallant v. Heckler</u>, 753 F.2d 1450, 1454 (9th Cir. 1984)).

15

1      **1.   The ALJ Improperly Rejected the Treating Physicians' Opinions**

2

3          Dr. Garcia, one of Plaintiff's treating physicians, diagnosed

4     Plaintiff with irritable bowel syndrome, fibromyalgia, post traumatic

5     stress syndrome, chronic fatigue syndrome, and depression.  (AR 458,

6     492).   He found that these impairments significantly restricted

7     Plaintiff's ability to sit, stand, and walk in an eight-hour workday.

8     (AR 491).  Dr. Chopra, another treating physician, diagnosed Plaintiff

9     with irritable bowel disease, pancreatitis, and fibromyalgia. (AR 474).

10    He, too, found that these impairments significantly restricted

11    Plaintiff's ability to sit, stand, and walk in an eight-hour workday.

12    (AR 473).   Finally, Dr. Jones, Plaintiff's treating psychiatrist,

13    diagnosed Plaintiff with major depression and recurrent anxiety

14    disorder.  (AR 460).  Dr. Jones found that Plaintiff was "unable to work

15    secondary to the severity of her illness."  (AR 460).

16

17         The ALJ did not credit the opinions of Dr. Garcia and Dr. Chopra,

18    however, because he found that they were unsupported by objective

19    findings.   (AR 25, 27).   Specifically, the ALJ contended that

20    Plaintiff's irritable bowel disease was "well controlled" and that no

21    clinical evidence supported a diagnosis of fibromyalgia, chronic fatigue

22    syndrome, post traumatic stress disorder, or depression.  (AR 25, 27).

23    The ALJ, therefore, rejected the opinions of Dr. Garcia and Dr. Chopra

24    in favor of the opinions of Dr. Nafoosi, a non-examining medical expert,

25    and Dr. Gregg, a non-examining State Agency psychiatrist.  (AR 26).  Dr.

26    Nafoosi opined that Plaintiff was mildly limited in her ability to lift

27    twenty pounds but was not otherwise restricted.  (AR 695).  Dr. Gregg

28    reported that Plaintiff's mental impairments were not severe and did not

16

1  significantly limit her.  (AR 517, 529).

2

3       In rejecting the opinions of Dr. Garcia and Dr. Chopra, however,
4  the ALJ did not provide "specific and legitimate reasons" supported by
5  substantial evidence in the record.  The record contradicts the ALJ's
6  assertion that Plaintiff's irritable bowel disease was well controlled.
7  For example, Dr. Chopra's treatment notes from October 2002 reported
8  complaints of chronic diarrhea, abdominal pain, and rectal bleeding.
9  (AR 587).  In May 2003, a letter to Dr. Garcia from Elizabeth Spencer,
10 a nurse practitioner, reported complaints of severe daily abdominal
11 pain, constant nausea, and frequent diarrhea and vomiting.  (AR 584-85).
12 In January 2004, Dr. Chopra reported to Dr. Garcia that Plaintiff "still
13 has loose stools" and that further tests and follow-up examinations were
14 scheduled.  (AR 658).  At the May 2004 hearing, Plaintiff testified that
15 she experiences severe cramping in her stomach, cannot control her
16 bowels, typically uses the bathroom eight to ten times a day, and often
17 has accidents. (AR 706-08).  Thus, the ALJ's assertion that Plaintiff's
18 irritable bowel disease was well controlled plainly contradicts the
19 record.  Accordingly, that assertion is not a "specific and legitimate"
20 reason, supported by substantial evidence in the record, for rejecting
21 the opinions of Dr. Garcia and Dr. Chopra.  See Rollins, 261 F.3d at
22 856.

23 \\

24 \\

25

26      The ALJ also erred by rejecting Dr. Chopra, Dr. Garcia, and Dr.
27 Jones' opinions regarding Plaintiff's depression.  The treatment notes
28 from the Temecula Psychiatric Center repeatedly describe Plaintiff as

having a "flat" or "blunted" affect.  (AR 503, 507, 508, 509, 511, 514).
Also, Dr. Chopra found that "[a]ll her symptoms are basically
somatization of her depressive state."  (AR 588).  Dr. Nafoosi also
notes that he believes Plaintiff has medically determinable depression.
(AR 695).  As such, the record includes specific findings supporting a
diagnosis of depression.

Moreover, because neither Dr. Nafoosi nor Dr. Gregg examined
Plaintiff, their opinions should be given less weight than the opinions
of treating physicians Dr. Garcia, Dr. Chopra, and Dr. Jones.  <u>See
Andrews</u>, 53 F.3d at 1040-41.  Nonexamining physician's opinions "with
nothing more" cannot constitute substantial evidence.  <u>Id.</u> at 1042.  The
Court finds that the ALJ did not give the appropriate weight to the
treating physicians' opinions.

In sum, the ALJ failed to give specific and legitimate reasons for
rejecting the treating physicians' opinions.  Also, as discussed above,
substantial evidence in the record supports the opinions of the treating
physicians.  Further, the ALJ failed to give the treating physicians'
opinions appropriate weight.  Therefore, the ALJ's rejection of the
opinions of treating physicians Dr. Chopra, Dr. Garcia, and Dr. Jones
in favor of non-examining physicians Dr. Nafoosi and Dr. Gregg was
improper.
\\
\\

**2.   The ALJ Improperly Rejected The Consultative Physician's
Opinion**

18

1    Based upon his examination of Plaintiff, Dr. Barreto found that
2    Plaintiff was "extremely depressed" and "psychiatrically impaired." (AR
3    496). He found that Plaintiff "would have problems working on a
4    consistent basis," "cannot keep up a work pace," "has tremendous
5    psychomotor retardation," and "has post traumatic symptoms with
6    anxiety." (Id.). The ALJ rejected this opinion, however, because he
7    found it "inconsistent with the objective evidence, the claimant's
8    treatment history, and the other medical source opinions in the record."
9    (AR 25). The ALJ, therefore, rejected Dr. Barreto's opinion in favor
10   of Dr. Gregg, a non-examining State Agency psychiatrist. (AR 26). Dr.
11   Gregg reported that Plaintiff's mental impairments were not severe and
12   did not significantly limit her. (AR 517, 529).

13

14    The ALJ incorrectly asserts, however, that Dr. Barreto's opinion
15   is inconsistent with objective evidence, Plaintiff's treatment history,
16   and the other medical opinions in the record. Dr. Barreto's own
17   examination of Plaintiff provided objective evidence of Plaintiff's
18   condition. His report noted "profound psychomotor retardation,"
19   discoloring around the eyes, "extremely slow" speech, and crying. (AR
20   494-95). In addition, Plaintiff's history of treatment for depression
21   is well documented in the record. (See, e.g., AR 459-60, 503-15).
22   Furthermore, Dr. Barreto's opinion regarding Plaintiff's mental
23   impairment closely comports with the opinions of Dr. Garcia (AR 458,
24   492) and Dr. Pamela Jones (AR 460). As such, Dr. Barreto's opinion is
25   not inconsistent with objective evidence from the record.
26    Moreover, only non-examining physician Dr. Gregg's opinion
27   contradicts the opinion of Dr. Barreto. As previously discussed,
28   nonexamining physician's opinions "with nothing more" cannot constitute

1  substantial evidence.   _Andrews_, 53 F.3d at 1042.

2

3      In sum, Dr. Barreto's opinion is consistent with the medical

4  evidence in the record.   Also, the ALJ did not give the appropriate

5  weight of an examining physician's opinion to Dr. Barreto's opinion.

6  The ALJ, therefore, improperly rejected Dr. Barreto's opinion.

7

8  **C.   Remand Is Required to Remedy Defects in the ALJ's Decision**

9

10     Remand for further proceedings is appropriate where additional

11 proceedings could remedy defects in the Commissioner's decision.   _See_

12 _Harman v. Apfel_, 211 F.3d 1172, 1179 (9th Cir.), _cert. denied_, 531 U.S.

13 1038, 121 S. Ct. 628, 148 L. Ed. 2d 537 (2000).   Because the ALJ erred

14 when he rejected the treating and examining physicians' opinions, the

15 case must be remanded to remedy this defect.   Upon remand, the ALJ must

16 reconsider the opinions of Dr. Chopra, Dr. Garcia, Dr. Jones, and Dr.

17 Barreto.   Additionally, the ALJ must reconsider Plaintiff's testimony

18 and the plaintiff's mother's Daily Activities Questionnaires.   If

19 necessary, the ALJ should require a consultative examination of

20 Plaintiff and request additional records or testimony from Plaintiff's

21 treating physicians, examining physicians, and the plaintiff's mother.

22 As the Court did not reach all of the issues raised in this case, the

23 parties shall not be precluded from addressing those issues or any other

24 issues on remand.

25

26                              **CONCLUSION**

27

28

                              20

1

2        Consistent with the foregoing, and pursuant to sentence four of 42

3   U.S.C. § 405(g),[8] IT IS ORDERED that judgment be entered REVERSING the

4   decision of the Commissioner and REMANDING this matter for further

5   proceedings consistent with this decision. IT IS FURTHER ORDERED that

6   the Clerk of the Court serve copies of this Order and the Judgment on

7   counsel for both parties.

8

9   DATED: May _24_, 2007.

10                                    _____/s/_____

11                                    SUZANNE H. SEGAL
                                      UNITED STATES MAGISTRATE JUDGE
12

13

14

15

16

17

18

19

20

21

22

23

24

25

26   _____

27        [8]  This sentence provides: "The [district] court shall have power
     to enter, upon the pleadings and transcript of the record, a judgment
28   affirming, modifying, or reversing the decision of the Commissioner of
     Social Security, with or without remanding the cause for a rehearing."

21